**UNITED STATES DISTRICT COURT**
**DISTRICT OF IDAHO**

| | |
|---|---|
| ANITA SALINAS (STRADLEY), | Case No.: 1:18-cv-00437-REB |
| Petitioner, | **MEMORANDUM DECISION AND ORDER** |
| vs. | |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Respondent, | |

Before the Court is Petitioner's Petitioner for Review (Dkt. 1), seeking review of the Social Security Administration's denial of her application for disability insurance benefits under Title II and Supplemental Security Income disability benefits under Title XVI of the Social Security Act. This action is brought pursuant to 42 U.S.C. § 405(g). Having carefully considered the record and otherwise being fully advised, the Court enters the following Memorandum Decision and Order:

**I. ADMINISTRATIVE PROCEEDINGS**

On April 5, 2013, Petitioner filed a Title II application for a period of disability and disability insurance benefits, and also protectively filed a Title XVI application for supplemental security income, alleging disability beginning March 10, 2011 (later amended to January 1, 2013). These applications were initially denied on July 19, 2013 and, again, on reconsideration on October 22, 2013. On November 26, 2013, Petitioner filed a Request for Hearing before an Administrative Law Judge ("ALJ"). On February 13, 2015, ALJ Luke A. Brennan held a hearing in Boise, Idaho, at which time Petitioner, represented by attorney Matt Steen, appeared and testified. Polly Peterson, an impartial vocational expert, also appeared and testified at the same hearing.

**MEMORANDUM DECISION AND ORDER - 1**

On March 30, 2015, the ALJ issued a Decision denying Petitioner's claim(s), finding that she was not disabled within the meaning of the Social Security Act.  Petitioner timely requested review from the Appeals Council and, on July 18, 2016, the Appeals Council denied Petitioner's Request for Review, making the ALJ's Decision the final decision of the Commissioner of Social Security.

Having exhausted her administrative remedies, Petitioner filed an action in this Court on September 20, 2016, alleging that the ALJ erred at step four of the sequential process by fashioning a residual functional capacity that did not reflect the limitations described by her treating physicians.  In an October 30, 2017 Report and Recommendation, U.S. Magistrate Judge Candy W. Dale agreed, stating in relevant part:

[As to Bill Laitinen, M.D.]:

The ALJ erred in assigning only "partial" weight to Dr. Laitinen's opinions.  First, the Court notes the ALJ did not satisfy the "substantial evidence" requirement, because the ALJ did not set out a detailed and thorough summary of the facts and conflicting clinical evidence, but rather produced a blunted summary consisting of one paragraph that the Court had difficulty finding support for in the record.  (AR 22).  *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014) (explaining how the ALJ satisfies the substantial evidence standard).  For instance, the ALJ notes Petitioner's complaints of pain were "sporadic," she did not see her doctor for nine months, physical examinations were "normal," and no tender points were noted. (AR 22).

With that summary, the ALJ concluded Petitioner's "treatment notes, physical examinations, diagnostic testing, consultative report, subjective complaints, and her activities of daily living suggest that her physical impairments are not as severe as she alleged," and cited as support over 300 pages of medical records.  (AR 22) (citing Exs. 4F-7F, 13F, 20F-22F).  Yet, the records of Nampa Medical Center and its treating providers Jon Perry, Kerry Williamson, and Dr. Laitinen directly contradict the ALJ's summary of the medical evidence and do not support the ALJ's conclusions of "sporadic" pain complaints, "normal" physical examinations, and the absence of tender points.  In fact, just the opposite was noted, as set forth by the Court above.

The ALJ, in other words:  (1) completely ignored most treatment records, including Dr. Laitinen's own records and those of his colleagues; (2) failed to recognize that Dr. Laitinen's opinions expressed in the November 14, 2014 RFC questionnaire

**MEMORANDUM DECISION AND ORDER - 2**

were based upon not only his experience with Petitioner, but also that of his colleagues, and therefore entitled to more weight than an otherwise unsupported and unexplained check-box form would not merit; (3) he did not explicitly compare Dr. Laitinen's records to other medical evidence; and (4) he did not evaluate Dr. Laitinen's records for internal consistency or inconsistency in his description of Petitioner's symptoms, which if he had, would have noted consistent complaints of pain and use of narcotic medications to control the pain. *See, e.g.*, *Garrison*, 759 F.3d at 1012 (outlining errors committed by the ALJ in that case with regard to evaluation of medical evidence).

Additionally, Petitioner noted that Perry's RFC assessment was consistent with Dr. Laitinen's RFC assessment, yet the ALJ similarly gave conclusory reasons for giving Perry's opinion "partial weight." The ALJ simply dismissed Perry's opinions, finding no support for Perry's conclusion regarding Petitioner's absenteeism, and discounting the opinion because Perry had treated Petitioner for only a few months. (AR 22). However, the ALJ failed to reconcile Perry's opinion with that of Dr. Laitinen, who reviewed Perry's treatment notes when forming his own opinions regarding Petitioner's capacity to perform work. The ALJ's failure in this regard constitutes error.

Finally, it appears the ALJ manufactured a conflict with Dr. Casper's assessment. The consultative examination of Dr. Casper showed Petitioner had no difficulty with gait or rising from a seated position. (AR 22-23). However, gait simply refers to the manner of walking, not the ability to sustain walking for a period of time over the course of an 8-hour work day. *Gait*, STEDMANS MEDICAL DICTIONARY 359060. And as noted in the next section, although Dr. Casper noted Petitioner was able to rise from a seated position, it was with difficulty. The ALJ therefore created an inconsistency where there was none, which was error.

[As to John Casper, M.D.]:

First, the ALJ's evaluation of Dr. Casper's opinion is entirely conclusory. He offers neither specific nor legitimate reasons for his determination (other than a conclusory statement) why his medical opinion is more persuasive, cited to no medical records that would support his conclusion, and simply used boilerplate language that fails to offer a substantive basis for his conclusion. *C.f. Garrison*, 759 F.3d at 1012-13 ("[A]n ALJ errs when he rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion.").

Second, Respondent's argument that the ALJ chose to reject the lifting and carrying restrictions is without merit. The ALJ offered no explanation for his deviation from Dr. Casper's lifting and carrying restrictions, despite giving the opinion "great weight." The Court finds the error significant, because sedentary work is defined as work that involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. 20 C.F.R.

**MEMORANDUM DECISION AND ORDER - 3**

§ 404.1567(a); SSR 83-10.   The Dictionary of Occupational Titles defines sedentary as "exerting up to 10 pounds of force occasionally."  The ALJ's RFC, which indicated Petitioner could lift and carry 12 pounds occasionally and 8 pounds frequently, was propounded to the vocational expert as a hypothetical.  However, it exceeds the exertional capacity for sedentary work, and it is unclear if the vocational expert would have given a different opinion had Dr. Casper's exact limitations been proffered with the RFC hypothetical.  (AR 63-64).

[As to Robert Vestal, M.D., and Myung Song, D.O.]:

The Court simply cannot reconcile the ALJ's reasoning.  There is no discussion beyond conclusory statements, regarding why the state agency opinions were inconsistent with Petitioner's treatment history.  It is perhaps clear from deductive reasoning that, by adopting, for the most part, Dr. Casper's sit/stand and lift/carry limitations, the ALJ ostensibly rejected Dr. Song's and Dr. Vestal's conflicting opinions regarding the same.  But, by giving Dr. Casper's opinion great weight, yet rejecting the manipulative limitations that Drs. Song and Vestal both found supported by Dr. Casper's objective physical examination findings, the ALJ erred.  In other words, Drs. Song and Vestal's findings that Petitioner had manipulative limitations is consistent with Dr. Casper's objective findings, but the ALJ gave no explanation why he failed to incorporate such limitations in the RFC.  There is simply no explanation given by the ALJ for this apparent contradiction, which constitutes error.

(AR 1143-45, 1147-49) (footnotes omitted).  Ultimately, Judge Dale concluded that "the ALJ erred in reconciling the various medical opinions, and provided little in the way of specific, clear, and convincing reasons, other than his own conclusory statements, to assign probative weight to each of the medical opinions."  (AR 1150).  Judge Dale therefore recommended that the Commissioner's decision "be remanded for further proceedings consistent with this Report."  *Id.*

On November 16, 2017, U.S. District Judge Edward J. Lodge adopted Judge Dale's Report and Recommendation, stating in relevant part:

The Court has conducted a review of the entire Report as well as the record in this matter for clear error.  The Court agrees with the findings and conclusions of the Magistrate Judge.

Specifically, the Court agrees with the Magistrate Judge's conclusion that the ALJ did not satisfy the "substantial evidence" requirement in assigning "partial weight" to Dr. Laitinen and Jon Perry PA-C's opinions.  The Magistrate Judge concluded that the ALJ did not set out a thorough summary of conflicting clinical evidence, but rather provided a one paragraph summary of the medical evidence that directly

**MEMORANDUM DECISION AND ORDER - 4**

contradicted the Nampa Medical Center's records. Similarly, the Magistrate Judge concluded that the ALJ erred in giving Jon Perry PA-C's opinions only "partial weight" despite finding that his RFC assessment was consistent with Dr. Laitinen's RFC assessment.

The Court also agrees with the Magistrate Judge's findings and conclusions concerning Dr. Casper's opinion. The ALJ assigned "great weight" to Dr. Casper's opinion as it was "consistent with the record as a whole." However, the Magistrate Judge found that the ALJ made this determination without providing specific or legitimate reasons as to why his opinion was more persuasive than the other medical providers, cited to no medical records that would support his conclusion, and simply used boilerplate language that fails to offer a substantive basis for his conclusion. Additionally, the Magistrate Judge found the ALJ significantly erred when, despite giving Dr. Casper's opinion "great weight," he deviated from Dr. Casper's recommendations as to Petitioner's lifting and carrying restrictions without explanation.

Finally, the Court agrees with the Magistrate Judge's findings and conclusions pertaining to Drs. Vestal and Song, whose opinions the ALJ assigned only "partial weight" because they were "somewhat inconsistent" with the medical records. The Magistrate Judge concluded that the ALJ made conclusory statements that Drs. Vestal and Song's opinions were inconsistent with the Petitioner's treatment history without any discussion. The Magistrate Judge concluded that it could not reconcile the ALJ's decision to reject Drs. Vestal and Song's opinions on the Petitioner's manipulative limitations, which were consistent with Dr. Casper's opinion while affording Dr. Casper's opinion "great weight." The Court agrees.

(AR 1128-29). Accordingly, Judge Lodge "remand[ed] the action to the Commissioner for further proceedings" consistent with his rulings and Judge Dale's Report and Recommendation. *Id.*; *see also* (AR 1119) (November 16, 2017 Judgment remanding case to Commissioner of Social Security Administration).

On January 16, 2018, the Appeals Council remanded this matter to an ALJ. *See* (AR 1157-59) ("The U.S. District Court for the District of Idaho (Civil Action Number 1:16-cv-00423) has remanded this case to the Commissioner of Social Security for further administrative proceedings . . . . Therefore, the Appeals Council vacates the final decision of the Commissioner of Social Security and remands this case to an [ALJ] for further proceedings consistent with the order of the court.").

**MEMORANDUM DECISION AND ORDER - 5**

On remand, ALJ Christopher Inama held a supplemental hearing in Boise, Idaho on May 31, 2018. Again, Petitioner, this time represented by attorneys Bradford D. Myler and Merrick Jackson, appeared and testified. Jerry Gravatt, an impartial vocational expert, also appeared and testified at the same supplemental hearing.

On August 8, 2018, the ALJ issued a Decision denying Petitioner's claim(s), finding, again, that she was not disabled within the meaning of the Social Security Act. Petitioner then initiated the instant action on October 10, 2018, alleging generally that "[t]he conclusions and findings of fact of the [Respondent] are not supported by substantial evidence and are contrary to law and regulation." Pet. for Review, p. 2 (Dkt. 1). Specifically, Petitioner argues that (1) "[t]he RFC determination is not supported by substantial evidence because the ALJ improperly discounted the opinions of treating physician Dr. Laitinen without good reasons as required by the regulations, ignoring the remand order"; and (2) "[t]he ALJ's RFC determination is not supported by substantial evidence where he failed to apply the appropriate analysis as contemplated by the regulations when weighing the opinions of Dr. Starr, the only examining mental health acceptable medical source." Pet.'s Brief, pp. 1, 15, 20 (Dkt. 17). Petitioner therefore requests that the Court either reverse the ALJ's Decision and find that she is entitled to disability benefits or, alternatively, remand the case for further proceedings. *See id.* at p. 22; *see also* Pet. for Review, p. 2 (Dkt. 1).

## II. <u>STANDARD OF REVIEW</u>

To be upheld, the Commissioner's decision must be supported by substantial evidence and based on proper legal standards. *See* 42 U.S.C. § 405(g); *Matney ex. rel. Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992); *Gonzalez v. Sullivan*, 914 F.2d 1197, 1200 (9th Cir. 1990). Findings as to any question of fact, if supported by substantial evidence, are conclusive. *See* 42 U.S.C. § 405(g). In other words, if there is substantial evidence to support the ALJ's factual

decisions, they must be upheld, even when there is conflicting evidence. *See Hall v. Sec'y of Health, Educ. & Welfare*, 602 F.2d 1372, 1374 (9th Cir. 1979).

"Substantial evidence" is defined as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Tylitzki v. Shalala*, 999 F.2d 1411, 1413 (9th Cir. 1993). The standard is fluid and nuanced, requiring more than a scintilla but less than a preponderance (*see Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n. 10 (9th Cir. 1975); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989)), and "does not mean a large or considerable amount of evidence." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

With respect to questions of fact, the role of the Court is to review the entire record to determine whether it contains evidence that would allow a reasonable mind to accept the conclusions of the ALJ. *See Richardson*, 402 U.S. at 401; *see also Matney*, 981 F.2d at 1019. The ALJ is responsible for determining credibility and resolving conflicts in medical testimony (*see Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984)), resolving ambiguities (*see Vincent ex. rel. Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984)), and drawing inferences logically flowing from the evidence (*see Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)). Where the evidence is susceptible to more than one rational interpretation, the reviewing court may not substitute its judgment or interpretation of the record for that of the ALJ. *See Flaten*, 44 F.3d at 1457; *Key v. Heckler*, 754 F.2d 1545, 1549 (9th Cir. 1985).

With respect to questions of law, the ALJ's decision must be based on proper legal standards and will be reversed or remanded for legal error. *See Matney*, 981 F.2d at 1019. The ALJ's construction of the Social Security Act is entitled to deference if it has a reasonable basis in law. *See id*. However, to be clear, reviewing federal courts "will not rubber-stamp an administrative decision that is inconsistent with the statutory mandate or that frustrates the

**MEMORANDUM DECISION AND ORDER - 7**

congressional purpose underlying the statute." *See Smith v. Heckler*, 820 F.2d 1093, 1094 (9th Cir. 1987).

### III. <u>DISCUSSION</u>

**A.    Sequential Process**

In evaluating the evidence presented at an administrative hearing, the ALJ must follow a sequential process in determining whether a person is disabled in general (*see* 20 C.F.R. §§ 404.1520, 416.920) – or continues to be disabled (*see* 20 C.F.R. §§ 404.1594, 416.994) – within the meaning of the Social Security Act.

The first step requires the ALJ to determine whether the claimant is engaged in substantial gainful activity ("SGA"). *See* 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). SGA is defined as work activity that is both substantial and gainful. "Substantial work activity" is work activity that involves doing significant physical or mental activities. *See* 20 C.F.R. §§ 404.1572(a), 416.972(a). "Gainful work activity" is work that is usually done for pay or profit, whether or not a profit is realized. *See* 20 C.F.R. §§ 404.1572(b), 416.972(b). If the claimant has engaged in SGA, disability benefits are denied, regardless of how severe her physical/mental impairments are and regardless of her age, education, and work experience. *See* 20 C.F.R. §§ 404.1520(b), 416.920(b). If the claimant is not engaged in SGA, the analysis proceeds to the second step. Here, the ALJ found that Petitioner "engaged in substantial gainful activity during part of 2017." (AR 947) (citations omitted). However, the ALJ concluded that there was a continuous 12-month period during which Petitioner did not engage in substantial gainful activity. *See* (AR 948) ("Other than the 2017-2018, discussed above, the claimant's earning records do not show substantial gainful activity after 2013, her amended alleged onset date. The remainder of this decision evaluates the claimant's allegations of disability under the remaining steps of the analysis for that interim period.").

**MEMORANDUM DECISION AND ORDER - 8**

The second step requires the ALJ to determine whether the claimant has a medically determinable impairment, or combination of impairments, that is severe and meets the duration requirement. *See* 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is "severe" within the meaning of the Social Security Act if it significantly limits an individual's ability to perform basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). An impairment or combination of impairments is "not severe" when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work. *See* 20 C.F.R. §§ 404.1521, 416.921. If the claimant does not have a severe medically determinable impairment or combination of impairments, disability benefits are denied. *See* 20 C.F.R. §§ 404.1520(c), 416.920(c). Here, the ALJ found that Petitioner has the following medically determinable impairments: "spine disorder, psoriatic arthritis, and idiopathic transverse myelitis (with chronic pain treated at times under other diagnoses)." (AR 948).

The third step requires the ALJ to determine the medical severity of any impairments; that is, whether the claimant's impairments meet or equal a listed impairment under 20 C.F.R. Part 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the answer is yes, the claimant is considered disabled under the Social Security Act and benefits are awarded. *See* 20 C.F.R. §§ 404.1520(d), 416.920(d). If the claimant's impairments neither meet nor equal one of the listed impairments, the claimant's case cannot be resolved at step three and the evaluation proceeds to step four. *See id.* Here, the ALJ concluded that Petitioner's above-listed impairments, while severe, do not meet or medically equal, either singly or in combination, the criteria established for any of the qualifying impairments. *See* (AR 951).

The fourth step of the evaluation process requires the ALJ to determine whether the claimant's residual functional capacity ("RFC") is sufficient for the claimant to perform past

**MEMORANDUM DECISION AND ORDER - 9**

relevant work.  *See* 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  An individual's RFC is

her ability to do physical and mental work activities on a sustained basis despite limitations from

her impairments.  *See* 20 C.F.R. §§ 404.1545, 416.945.  Likewise, an individual's past relevant

work is work performed within the last 15 years or 15 years prior to the date that disability must

be established; also, the work must have lasted long enough for the claimant to learn to do the

job and be engaged in substantial gainful activity.  *See* 20 C.F.R. §§ 404.1560(b), 404.1565,

416.960(b), 416.965.  On this point, the ALJ concluded:

> After careful consideration of the entire record, I find that the claimant has the
> residual functional capacity to perform light work, as defined in 20 CFR
> 404.1567(b) and 416.967(b), with some further restriction.  She is not limited on
> climbing ramps and stairs and can occasionally climb ladders.  She can frequently
> balance, stoop, kneel, crouch, or crawl.  With her right upper extremity, she can
> reach overhead frequently (without other manipulative limitations).  She must
> avoid concentrated exposure to extreme cold, vibrations, and hazards (such as
> unprotected heights and dangerous machinery).

(AR 951).

In the fifth and final step, if it has been established that a claimant can no longer perform

past relevant work because of her impairments, the burden shifts to the Commissioner to show

that the claimant retains the ability to do alternate work and to demonstrate that such alternate

work exists in significant numbers in the national economy.  *See* 20 C.F.R. §§ 404.1520(a)(4)(v),

416.920(a)(4)(v), 404.1520(f), 416.920(f); *see also Matthews v. Shalala*, 10 F.3d 678, 681 (9th

Cir. 1993).  Here, the ALJ found that Petitioner "is capable of performing past relevant work as a

telephone solicitor, customer service representative, and collections clerk" as "[t]his work does

not require the performance of work-related activities precluded by the claimant's residual

functional capacity."  (AR 959).  Alternatively, considering Petitioner's age, education, work

experience, and RFC, the ALJ separately concluded that "there are other jobs that exist in

significant numbers in the national economy that the claimant also can perform," including (1)

**MEMORANDUM DECISION AND ORDER - 10**

bench assembler, (2) small products assembler, and (3) machine feeder.  (AR 960-61).

Therefore, the ALJ concluded that Petitioner "has not been under a disability, as defined in the

Social Security Act, from March 10, 2011, through the date of this decision."  (AR 961) ("A

finding of 'not disabled' is therefore appropriate under the framework of the above-cited rules.").

## B.    Analysis

Petitioner claims that the ALJ improperly considered the medical evidence, arguing that

the RFC determination is not supported by substantial evidence because the ALJ improperly

minimized the opinions of Drs. Laitinen and Starr.  *See* Pet.'s Brief, pp. 15-22 (Dkt. 17).

The ALJ is responsible for resolving ambiguities and conflicts in the medical record.  *See*

*Magallanes*, 881 F.2d at 750.  The ALJ must provide clear and convincing reasons for rejecting

the uncontradicted medical opinion of a treating or examining physician, or specific and

legitimate reasons for rejecting contradicted opinions, so long as they are supported by

substantial evidence.  *See Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).  However,

"[t]he ALJ need not accept the opinion of any physician, including a treating physician, if that

opinion is brief, conclusory, and inadequately supported by clinical findings."  *Chaudhry v.*

*Astrue*, 688 F.3d 661, 671 (9th Cir. 2012).  Additionally, the ALJ may discount physicians'

opinions based on internal inconsistencies, inconsistencies between their opinions and other

evidence in the record, or other factors the ALJ deems material to resolving ambiguities.  *See*

*Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 601-02 (9th Cir. 1999).  Finally, an ALJ is

not bound to a physician's opinion of a claimant's physical condition or the ultimate issue of

disability.  *Magallanes*, 881 F.2d at 751.

If the record as a whole does not support the physician's opinion, the ALJ may reject that

opinion.  *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004).  Items

in the record that may not support the physician's opinion include clinical findings from

**MEMORANDUM DECISION AND ORDER - 11**

examinations, conflicting medical opinions, conflicting physician's treatment notes, and the claimant's daily activities. *See id*.; *see also Bayliss*, 427 F.3d 1211; *Connett v. Barnhart*, 340 F.3d 871 (9th Cir. 2003); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595 (9th Cir. 1999).

For the reasons discussed below, ALJ Inama properly considered the opinions of Drs. Laitinen and Starr when assessing Petitioner's RFC at step four of the sequential process.

1.   Bill Laitinen, M.D.

Dr. Laitinen completed a two-page RFC questionnaire on November 14, 2014 (the "Questionnaire"), after Petitioner recently established care with him. *See* (AR 909-10). Dr. Laitinen diagnosed Petitioner with fibromyalgia, depression, and chronic pain syndrome, which resulted in symptoms of pain, fatigue, dizziness, and blurred vision. *See* (AR 909). Additionally, Dr. Laitinen noted Petitioner's medication caused drowsiness. *See id*. In Dr. Laitinen's opinion, Petitioner would need more than the typically-provided number of work breaks; she was limited to sitting and standing no more than one hour each in a typical 8-hour work day; she could occasionally lift and carry 10 pounds or less but never more than that; she has limitations in doing repetitive reaching, handling, or fingering;[1] and she would miss work more than four times each month. *See* (AR 909-10). In Dr. Laitinen's opinion, Petitioner was not physically capable of working on a full-time, sustained basis. *See* (AR 910).

Originally, ALJ Brennan justified giving Dr. Laitinen's opinions in these respects only "partial weight" by stating:

> In addition, Bill Laitinen, M.D., a treating physician, opined that the claimant can perform less than sedentary work with extreme limitations and absenteeism more than four times per month as well (Ex. 23F). The opinion of the doctor is given

---

[1]   In indicating that Petitioner has such limitations, the next section of the Questionnaire asked Dr. Laitinen to indicate the percentage of time during an 8-hour workday in which Petitioner can use her hands, fingers, and arms for grasping, turning, and twisting objects, as well as fine manipulation, and reaching. *See* (AR 910). In response, Dr. Laitinen stated simply "unknown." *Id*.

**MEMORANDUM DECISION AND ORDER - 12**

partial weight because no explanation is given to support these limitations, particularly with regard to the combined sit or stand for 2 hours in an 8-hour day and for her absenteeism.  Furthermore, the consultative examination showed no difficulty with gait or rising from a seated position.

(AR 22-23).

As stated above, however, ALJ Brennan did not provide specific and legitimate reasons for discounting Dr. Laitinen's opinions, which resulted in remand.  *See supra* (citing (AR 1128-29)).  Following remand, ALJ Inama revisited Petitioner's claims, including the same opinions offered by Dr. Laitinen, stating at the outset of the Decision:

> Pursuant to the District Court remand order, the Appeals Council has directed the undersigned to review the evidence and provide the claimant an opportunity for another hearing.  The District Court's Order (based on a Magistrate Judge's Report and Recommendation) described the previous ALJ erred in evaluating and assigning weight to the opinions of treating sources:  "The Report concluded the ALJ erred by providing little in the way of specific, clear, and convincing reasons in support of the probative weight given to each of the medial opinions" (22A/8; see also 23A).  In particular, the Report and Recommendation pointed out the inadequate discussion and unsupported characterizations of the opinions of Dr. Laitinen and consultative examination physician John Casper (23A/9-15).  I have closely reconsidered these opinions, as well as new evidence of treatment and opinion statements.  This decision accounts for the District Court's discussion of previous errors in evaluating the opinions and formulating the residual functional capacity.

(AR 945); *see also* (AR 957) (in discussing Dr. Laitinen's opinions, ALJ Inama stating:  "The District Court's remand order criticized the previous ALJ decision for inadequate discussion and evaluation of this opinion.").  But simply stating that the post-remand Decision "accounts for previous errors" does not make it so.  To be sure, Petitioner argues here that, in giving Dr. Laitinen's opinions only "little weight," ALJ Inama similarly erred in questioning Dr. Laitinen's opinions.  *See* Pet.'s Brief, pp. 19-20 (Dkt. 17) ("Therefore, the ALJ's reasoning in rejecting [Dr. Laitinen's] opinion is insufficient, as the treating source opinions are well-supported by the record.  The ALJ's assertion that they are lacking explanation is unwarranted, and this matter requires remand so this opinion may be properly considered, the remand order be followed, and

**MEMORANDUM DECISION AND ORDER - 13**

so an RFC determination may be made with substantial eviden[tiary] support."). This time around, the Court disagrees.

To begin, like ALJ Brennan, ALJ Inama took issue with the Questionnaire – in particular, "the extreme sit, stand, walk, lift, and manipulative limits." (AR 957-58). However, in contrast to ALJ Brennan, ALJ Inama detailed the particular reasons why Dr. Laitinen's opinion on these points was problematic. First, there is no question that Petitioner suffers from chronic pain and takes medication to treat such pain;[2] ALJ Inama said as much when he discussed Petitioner's treatment history and concluded that Petitioner has several severe impairments that limit her ability to do basic work-related activities. *See* (AR 948-59). However, there is no basis to conclude from this that Petitioner is altogether incapable of working full-time. That is, Dr. Laitinen failed to connect any dots supporting his apparent conclusion that Petitioner's subjective

---

[2] Judge Dale's references to the medical record within the October 30, 2017 Report and Recommendation highlight such realities. *See* (AR 1141-43). To the extent these records correspond to Petitioner's fibromyalgia, ALJ Inama specifically rejected its inclusion at step two of the sequential process, stating:

> In this case, the claimant's fibromyalgia appeared to be diagnosed, first, by a nurse practitioner, not an acceptable medical source (5F). This diagnosis was apparently carried over without scrutiny or evaluation under the diagnostic criteria. Examinations by a physician do not specifically document locations (24F/4) or show a persistence of tender points (see 2F/8, 12-15), so the 1990 fibromyalgia criteria are not met. The 2010 criteria are not consistently documented, and problems with fatigue and depression (as co-occurring conditions) were just as likely attributable to other ailments. Other causes of the claimant's widespread pain, including somatic origins, autoimmune problems (such as psoriatic arthritis, see 13F/8), or other neurological problems, were not ruled out by the providers who recorded fibromyalgia.

(AR 949). Petitioner does not challenge this finding. Therefore, the *fact* of Petitioner's possible fibromyalgia do not establish either a limiting impairment or, relevant here, the limitations that Dr. Laitinen indicates in the Questionnaire. *Compare* Pet.'s Brief, p. 17 (Dkt. 17) ("Dr. Laitinen's treatment notes repeatedly document severe fibromyalgia symptoms with uncontrollable pain and multiple tender trigger points on examination."), *with* (AR 958) (ALJ Inama stating: "References to fibromyalgia are not persuasive, as the record does not establish this as a medically determinable impairment, as explained [at step two].").

**MEMORANDUM DECISION AND ORDER - 14**

pain complaints translate into the substantial limitations that, combined, effectively preclude any ability to work.  *See* (AR 958) (ALJ Inama pointing out that Dr. Laitinen's opinion "comes on a check-box form with little explanation or supportive references to the treatment history or objective medical evidence.").  Without more, one does not *ipso facto* equal the other.  *See Bayliss*, 427 F.3d at 1216 (ALJ not required to accept medical opinion that is brief, conclusory, or inadequately supported by objective findings).

   Second, as ALJ Inama noted, the limitations reflected in the Questionnaire do not align with Dr. Laitinen's own treatment notes over time.  *See* (AR 958).  Those notes confirm the existence of Petitioner's understood pain symptomology; they do not, however, make reference to any corresponding functional limitations arising therefrom, highlighting the disconnect between Dr. Laitinen's treatment notes preceding the Questionnaire  *See* (AR 954, 958) (ALJ Inama commenting that treatment records "do not provide much insight into" Petitioner's functional problems; that "physical examinations in 2014 do not document objective debilitating problems with her musculoskeletal or neurological systems"; and that "limitations are not consistent with [Dr. Laitinen's] own exam notes, which showed, at most, tenderness in some muscles and mild decrease in range of motion but mostly normal findings.").  In this setting, the restrictive limitations indicated in the Questionnaire (as well as Dr. Laitinen's unsupported opinions concerning Petitioner's expected absences from work) stand alone and cannot be verified.  As a result, they are of limited utility toward understanding Petitioner's true (in)ability to work.  *See* 20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3) ("The more a medical source presents relevant evidence to support a medical opinion, particularly medical signs and laboratory findings, the more weight we will give that medical opinion.  The better an explanation a source provides for a medical opinion, the more weight we will give that medical opinion."); *see also Hoge v. Berryhill*, 2017 WL 4881586, at *9 (D. Or. 2017) ("[T]he ALJ's conclusion that Dr.

**MEMORANDUM DECISION AND ORDER - 15**

Freed's report was generally conclusory and inadequately explained was a rational interpretation of this evidence; as such, it should be upheld as a specific and legitimate reasons, supported by the record, to disregard Dr. Freed's opinion.") (citing *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005)).

Third, Dr. Laitinen's opinions are contradicted.  In November 2016, Jacob Kammer, M.D., performed a consultative examination, assessing Petitioner with fibromyalgia, a history of transverse sensory myelitis, psoriasis, a history of osteoporosis, and a history of depression and anxiety.  *See* (AR 1632, 1636).  These diagnoses/impairments are not at issue; instead, it is whether Petitioner's impairments involve the sort of limitations that preclude her from working. And, on this point, Dr. Kammer stated:

> No restrictions on sitting, standing, walking, lifting, and carrying [up to 50 pounds], or handling objects.  No restrictions on hearing, speaking, or traveling.  She has the ability to manipulate small objects.  She is a little hesitant when she gets on and off the examination table, but she does so without any assistive device.  She is able to rise up from a seated to a standing position and go back down from a standing to seated position.  There is no evidence of gross deformity on any parts of her examination.  There is no enlargement, effusion, heat, or tenderness in any joint. The only joint that has limited range of motion is the right shoulder on forward flexion.  When I passively move the arm around, I was able to get her almost up to full flexion.

(AR 1636-37).  Clearly, then, Dr. Laitinen's opinions are not shared, with Dr. Kammer acknowledging Petitioner's abilities and opining that Petitioner could indeed work.  ALJ Inama more-or-less agreed – disputing Petitioner's fibromyalgia as a medically determinable impairment at step two (*see supra*), but nonetheless giving Dr. Kammer's opinions "great weight" in light of their consistency with examination findings and x-rays.  *See* (AR 957).  Even so, Petitioner's RFC includes more restrictions than Dr. Kammer found because, according to ALJ Inama, Petitioner's overall pain levels and condition appeared to have improved as of Dr. Kammer's assessment in 2016.  *See id*. ("A light residual functional capacity better accounts for

**MEMORANDUM DECISION AND ORDER - 16**

the claimant's overall limitations for the years from her amended alleged onset date through the time of this hearing.").[3]

Finally, where Dr. Laitinen's opinions seemingly are driven by Petitioner's own subjective complaints (*see, e.g.*, (AR 1141-43) (treatment notes cited within October 30, 2017 Report and Recommendation reference Petitioner's complaints), ALJ Inama rejected them as not credible (*see* (AR 953-55)), which Petitioner does not contest here. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (ALJ may reject treating doctor's opinion if it is based "to a large extent" on claimant's self-reports that have been properly discounted as not credible).

Combined, these details from the medical record contain sufficient reasons for rejecting Dr. Laitinen's opinions on what amounts to a disability determination. *See Rodriguez*, 876 F.2d at 762 (treating or examining physician's opinion on the ultimate issue of disability not conclusive); *see also* SSR 96-5p, 1996 WL 374183, *2 ("The regulations provide that the final

---

[3] Petitioner does not address the ALJ Inama's consideration of Dr. Kammer's assessment (except to generally mention Dr. Kammer's opinions themselves). *See* Pet.'s Brief, p. 11 (Dkt. 17)). Rather, he relies on treating physician's assistant, Jon Perry's, opinion as strongly supporting Dr. Laitinen's opinions. *See id.* at pp. 18-19. PA Perry's opinions essentially track those of Dr. Laitinen's. *See* (AR 816-17) (another two-page RFC questionnaire indicating that Petitioner would need more than typically-provided number of work breaks; she was limiting to standing and sitting nor more than two hours each in typical 8-hour work day; she could occasionally lift and carry less than 10 pounds but never more than that; she has limitations in doing repetitive reaching, handling, or fingering; she would miss work more than four times each month; and she was not physically capable of working on full-time, sustained basis). In addition to PA Perry not being an acceptable medical source, the same reasons supporting ALJ Inama's rejection of Dr. Laitinen's opinions concerning Petitioner's limitations apply equally to PA Perry. *See* (AR 957) (ALJ Inama stating: "This check-box opinion, using the representative's somewhat suggestive form, is not supported by narrative or citation to treatment or objective medical evidence. . . . Mr. Perry provides no objective support for his extreme sit, stand, walk, lift, and manipulative limits. These limits are not consistent with his own exam notes. These limits are not consistent with findings made in the physical consultative examination [(Dr. Kammer's assessment)]. Mr. Perry provides no metric for calculating the excessive breaks and absences, apparently based on the claimant's subjective complaints or on speculations, since there is no record in his form or treatment notes showing observation of breaks or days of rest."); *see also supra*. Understandably, then, ALJ Inama likewise gave only "little weight" to PA Perry's opinions. (AR 957).

**MEMORANDUM DECISION AND ORDER - 17**

responsibility for deciding [whether an individual is 'disabled' under the Act] . . . is reserved to the Commissioner.").

      2.   <u>David Starr, Ph.D.</u>

On November 15, 2016, Dr. Starr conducted a psychological evaluation of Petitioner, after which he concluded she had borderline personality disorder, panic disorder, obsessive compulsive disorder, alcohol use disorder in partial remission by self-report, and unspecified neurocognitive disorder.  *See* (AR 1628).  He summarized and opined:

> Anita Salinas has problems with anxiety.  These difficulties are complicated by a borderline character structure.  She has some health problems and she is concerned about that.  Ms. Salinas has a relatively recent history of drinking a fifth per day.  She is obsessive in her thinking and compulsive in her behavior.
>
> Mental status exam revealed a partially oriented woman who had difficulty remembering verbally mediated materials.  A measure of basic math skills and focus and persistence suggested some impairment and her fund of information is limited.  Ms. Salinas can think abstractly, but her judgment is impaired.  She will need assistance managing her funds.  She would benefit from a dialectical behavior therapy.

*Id*.

ALJ Inama gave Dr. Starr's opinion "relatively greater weight" than the opinion from PA Perry, but still found it "not entirely convincing, because the claimant returned to skilled work as a call center collections clerk, just a few months later . . ., and the treatment record does not establish any dramatic change in her physical or psychological condition."  (AR 955).  Moreover, ALJ Inama concluded that "[t]he longitudinal treatment history and overall picture of mental status examination do not show more than mild impairment in understanding, memory, concentration, social functioning, or mental adaptation."  (AR 956).  Petitioner contends that conclusion was error, as the ALJ dismissed "the only examining mental medical source in the record," claiming that Petitioner had to "return[ ] to work for a brief period of time so she could receive treatment," and that she fortunately "had an accommodating employer, who provided

many opportunities and showed infinite understanding in her absences, breaks, and type of work she is able to complete." Pet.'s Brief, pp. 21-22 (Dkt. 17).

These arguments do not upend ALJ Inama's consideration of Dr. Starr's opinions. First, that Dr. Starr may be the only examining mental medical source in the record is some degree of support for ALJ Inama's point that Dr. Starr's opinions are not confirmed elsewhere in the treatment history.[4] Even so, state agency psychologists Mack Stephenson, Ph.D., and Dave Sandford, Ph.D., opined that Petitioner had only mild functional problems and therefore no severe mental impairments. *See* (AR 959) (citing (AR 96-110, 1051-67)).[5] Second, it is undisputed that Petitioner engaged in substantial gainful activity soon after Dr. Starr rendered his opinions and, according to ALJ Inama, did so without any accommodations. *See* (AR 948) ("There is no evidence the claimant did work under special conditions (accommodated).") (citation omitted). Finally, Petitioner's efforts to diminish the significance of her return to work (namely, that she had to return to work to receive treatment and that she was accommodated (*see supra*)) are premised upon her testimony at the hearing which, as previously noted, ALJ Inama did not find credible, and which Petitioner does not contest here. *See supra* (citing *Tommasetti*,

---

[4]   On this issue, Respondent argues that "Petitioner does not identify any credible evidence in the record of specific work related functional limitations in her ability to perform basic work related mental activities that result from her medically determinable impairments." Respt.'s Brief, p. 14 (Dkt. 18). In response, Petitioner cites to Dr. Starr's opinions. *See* Pet.'s Reply, p. 5 (Dkt. 19) ("Defendant argues that Plaintiff 'does not identify any credible evidence in the record of specific work related functional limitations in her ability to perform basic work related mental activities that result from her medically determinable impairments.' When in actuality, Plaintiff specifically points to the credible opinion evidence in the record, Dr. Starr."). This naturally misses the point in that support for an argument cannot be the argument itself.

[5]   Still, ALJ Inama gave Dr. Sanford's opinion only "little weight" because he disagreed with his opinion that Petitioner is capable of returning to skilled work within the next year. *See* (AR 959).

**MEMORANDUM DECISION AND ORDER - 19**

533 F.3d at 1041 (ALJ may reject treating doctor's opinion if it is based "to a large extent" on claimant's self-reports that have been properly discounted as not credible)).

It is clear that Petitioner suffers from several impairments (acknowledged as "severe" by the ALJ (*see* (AR 948)) that impact her ability to work. However, ALJ Inama provided specific legitimate reasons for rejecting or questioning certain opinions contained in the medical record. It follows that ALJ Inama would not give those opinions the weight Petitioner argues that they deserved.  But, such opinions were considered in the context of the surrounding medical record. This Court's role does not extend to resolving the conflicting opinions and ultimately deciding whether Petitioner is once-and-for-all disabled as that term is used within the Social Security regulations.  Rather, this Court must decide whether ALJ Inama's decision that Petitioner is not disabled is supported by the record.  In this record, conflicting medical opinions, testimony, and accounts inform ALJ Inama's decisions on how to consider the various opinions.  ALJ Inama decided to discount certain opinions while crediting others.  He supports his decision by clear and convincing, specific, and legitimate reasons.  Hence, because the evidence can reasonably support ALJ Inama's conclusions in these respects, this Court will not substitute its judgment for that of ALJ Inama's even if this Court were to have a different view.  *See Richardson*, 402 U.S. at 401; *Matney*, 981 F.2d at 1019.

## IV.  <u>CONCLUSION</u>

The ALJ is the fact-finder and is solely responsible for weighing and drawing inferences from facts and determining credibility.  *Allen*, 749 F.2d at 579; *Vincent ex. rel. Vincent*, 739 F.2d at 1394; *Sample*, 694 F.2d at 642.  If the evidence is susceptible to more than one rational interpretation, one of which is the ALJ's, a reviewing court may not substitute its interpretation for that of the ALJ.  *Key*, 754 f.2d at 1549.

**MEMORANDUM DECISION AND ORDER - 20**

The evidence relied upon by ALJ Inama can reasonably and rationally support his well-formed conclusions, despite the fact that such evidence may be susceptible to a different interpretation.  Accordingly, ALJ Inama's decisions as to Petitioner's disability claim were based on proper legal standards and supported by substantial evidence.  Therefore, the Commissioner's determination that Petitioner is not disabled within the meaning of the Social Security Act is supported by substantial evidence in the record and is based upon an application of proper legal standards.

The Commissioner's decision is affirmed.

DATED: May 15, 2020

Ronald E. Bush
Chief U.S. Magistrate Judge

**MEMORANDUM DECISION AND ORDER - 21**